IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## MICHAEL WILLIAMS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27128     W. Otis Higgs, Judge**

_____

**No. W2005-01810-CCA-R3-PC  - Filed November 20, 2006**

_____

The petitioner, Michael Williams, appeals the denial of post-conviction relief.  Specifically, he contends that trial counsel was ineffective by failing to have him undergo a mental evaluation prior to trial.  Upon review, we conclude that the petitioner has failed to meet his burden that:   (1) his counsel was deficient in her performance, and (2) he was prejudiced in his claim of ineffective assistance.  We affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Michael Williams.

Paul G. Summers, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

The petitioner is seeking post-conviction relief from his conviction of rape and the sentence of thirty years as a violent offender.  The petitioner's trial counsel testified during the post-conviction hearing that the petitioner was arrested after the grand jury indictment and that she was appointed as counsel and began investigating the case.  She met with the petitioner and obtained his list of potential witnesses.  The investigator for the public defender's office met with all of his proposed witnesses, as well as the witnesses proposed by the State.  She also copied the prosecutor's file with the exception of the victim's statement.  The investigator did not meet with the victim because the victim refused to speak with the defense.  Counsel explained that she did not meet with the police

officers or the nurse who performed the examination on the victim because they usually do not speak with attorneys prior to trial.

Counsel testified that she filed a motion for a speedy trial and a motion in limine regarding the prior convictions of the petitioner. She said that the victim identified the petitioner from a book of mug shots. She also said that the police did not provide her a photo lineup because the identification of the petitioner was not done through a lineup. She said that she did not file a Rule Sixteen motion for discovery because the prosecution had already provided her with their entire file with the exception of the victim's statement, which she copied herself. She made five attempts to speak with the petitioner at the jail. He refused to meet with her on one occasion. She discussed all the discovery with the petitioner and provided him with copies of all the material. He gave several statements to her as to his version of events before he gave the version they used at trial. She said that she investigated the petitioner's background by obtaining his juvenile record. She did not file a motion for expert services or a mental evaluation because the petitioner gave her no indication that he might need an evaluation and never told counsel that he had a history of mental illness. She was aware that the petitioner had a history of patronizing prostitutes.

She testified that the defendant initially told her that he did not have sex with the victim and told her that he was still in jail when the victim claimed the incident occurred. Later he said that he was at home and could not have possibly had sex with the victim. Eventually, he admitted that he did have sex with the victim.

She acknowledged that this was her first rape trial but said that she had experience in trying sexual assault cases. She said that she did investigate the victim's criminal background but not her sexual background. She did not file a Rule Twelve notice of intent to check the sexual history of the victim, and she did not ask the victim about her sexual history while she testified. She testified that their theory of defense was that the sex was consensual. Their defense was that the defendant agreed to pay the victim for sex but that he left without paying and, as revenge, the victim accused him of rape. At trial, the victim refuted their theory of defense with her testimony even though it was brought out that she had made some inconsistent statements. Counsel testified that the State offered a sentence of eight years and that the petitioner, if convicted, faced thirty years because his prior convictions made him a career offender. She believed that there was a good chance the petitioner would be convicted and that he was making a mistake in rejecting the plea offer. She did not believe that anything was wrong with him mentally for turning down the offer.

She testified that in her initial interview with a client, she obtains any necessary personal information, relays the issues about the case, and provides discovery or an affidavit of complaint, if available. She said that if a client indicates he or she has any problem, she would discuss it with the client. She acknowledged that she does not always ask about medication. She testified that if she had known the petitioner took medication for depression, she would have inquired further and an evaluation would have been a possibility but not a certainty. She did not ask about medication, and the petitioner never indicated that he was taking any medication. She did not obtain the petitioner's school records, but she was aware that he dropped out of high school in the tenth grade.

She added that most of her clients did not graduate from high school. Finally, she said that, in and of itself, a high school diploma or lack thereof is not indicative of mental disease. Further, most of her clients also have juvenile records and that does not mean that they suffer from mental disease.

On cross-examination, counsel testified that there were at least twelve court appearances for the petitioner up to the time of his trial. When he rejected the State's plea offer, she questioned him before a judge. He was also voir dired at the start of trial and during the trial. Each time he understood what he was doing and was able to answer the questions. Counsel said that the petitioner understood both the State's offer and his range of punishment and exposure. A DNA analysis was completed and showed that the semen on the victim was the petitioner's. She said that she always spoke with the petitioner at his court appearances. She spoke with the petitioner's mother because she planned to call her to testify, and she presented the petitioner's mother as a witness at trial. Counsel said the victim did not appear to be very old and looked as though she might have been a basketball player. She cross-examined the victim at length during the trial and tried to point out the inconsistencies in her statements.

Counsel testified that the petitioner never mentioned his mental problems. The petitioner talked with her about filing other motions including a discussion about the DNA testing and what it would show. She said that the petitioner asked reasonable questions and never appeared as though he had any problem understanding. They reviewed the bond hearing report, and the petitioner told her what was correct. They succeeded in getting his bond lowered from $150,000 to $50,000. She also said that the petitioner's mother never indicated that he had any history of mental problems. The petitioner was able to assist counsel in deciding all the legal procedures, and she never had any reason to suspect that there was a mental deficiency.

During re-direct examination, counsel said that the DNA evidence does not prove whether the sex was rape or consensual, but it does show that they had sex. She said that they attempted to verify the victim's story about being on her way home from the gym when the rape occurred, but the gym was no longer in business. She said that the prosecution did not give her the information regarding the gym until the trial. The potential witness was unable to testify because he was on dialysis the day of the hearing.

Next, the petitioner testified that he was a career criminal but that he had always "copped out" to everything he did. He was released from the penal farm at approximately seven o'clock p.m. on the day of the incident after serving "right about two years" and was picked up by his friend Courtney Harris and Mr. Harris's mother. The petitioner's prior convictions included six robberies and three aggravated burglaries. He said that he had received treatment for depression and behavior problems at Lakeside and Timber Springs in Bolivar in 1994. He took medicine for his depression, including Elavil and Benadryl, but is no longer on depression medication. He claimed he told his trial counsel that he had a history of depression and that he had spent time at Timber Springs. He said that she told him that was not a proper defense for rape. He testified that counsel advised him to take the offer of eight years, but he would not plead because he was innocent. He said that counsel only met with him on two occasions prior to trial. He said that he wanted Mr. Harris and

his mother to testify because Mr. Harris's mother was a Christian and they could both verify taking him home. He said there was no question that he had sex with the victim, but he did not rape her. He also said that he knew the victim had not been to the gym on the night of the incident. He said that if counsel had done a better job, she could have proven that he was not guilty.

On cross-examination, the petitioner testified that he told counsel only one version of the events. He said that he never raped anyone and that the victim lied. He said that the jury did not listen to him but convicted him after looking at his record. He acknowledged that the jury did listen to the victim's version of events.

During re-direct examination, the petitioner said that counsel came to him talking about rape. He denied raping anyone and said he thought she was talking to him about something else. He admitted that he had sex with the victim but insisted that it was consensual.

The State did not present any proof during the post-conviction proceeding. In closing argument, the petitioner claimed that his whole background "screamed" mental illness. He argued that, had the mental evaluation been conducted, it might have negated the mens rea element for rape. The State argued that no proof was presented of ineffective assistance of counsel. The State argued that, in fact, the proof demonstrated that the petitioner received competent counsel and that there was never any indication that the petitioner did not understand what was going on or what the procedures were.

## Analysis

On appeal, the petitioner contends that he did not receive effective assistance of counsel during his trial. Specifically, he avers that counsel was ineffective for failing to move the court to order a mental evaluation.

This court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. Goad, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine if counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases.

Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

On appeal, the petitioner contends that he received ineffective assistance of counsel during trial because counsel did not have him evaluated for alleged mental illness. He argues that the post-conviction court should not have relied on counsel's testimony that she had no indication the petitioner had any mental illness. He argues that, because counsel testified that she reviewed the petitioner's juvenile record prior to trial which indicates that the petitioner was committed to the Department of Mental Health and Retardation, her failure to investigate his commitment constitutes ineffective assistance of counsel. He further argues that, had counsel actually investigated his background, she would have found that further investigation into his mental capacity would have been warranted. Upon the record, we conclude that trial counsel was not deficient in her performance and was not obligated to conduct further investigation concerning the petitioner's mental capacity.

The petitioner must prove both prongs of the Strickland test in order to obtain relief. Failure to prove either prong provides a sufficient basis to deny relief. Goad, 938 S.W.2d at 369. Under Tennessee Code Annotated section 40-30-11(f), a petitioner who is afforded a post-conviction evidentiary hearing by the trial court must do more than merely present evidence. He must prove his allegations by clear and convincing evidence. We also conclude that the petitioner has failed to establish that he was prejudiced by counsel's representation. He failed to prove that there was a reasonable probability sufficient to undermine confidence in the outcome of the case. In fact, he failed to show that there was anything in the record other than a single notation, "Department of Mental Health & Mental Retardation," with no description of what the notation meant or entailed and with no description of treatment or diagnosis from a treating physician. At the post-conviction hearing, the petitioner offered no evidence, except his own testimony, that he had been committed and diagnosed with depression. He offered no witnesses or evidence to support his allegation that a mental evaluation was warranted or what an evaluation would reveal sufficient to support his defense. Quite simply, the petitioner offered nothing to support his allegation that counsel's representation had prejudiced him.

<u>Conclusion</u>

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE